DISCIPLINARY PROCEEDINGS
CALOGERO, Justice.*
This is a disciplinary proceeding by the Louisiana State Bar Association, through its Committee on Professional Responsibility against one of its members, Steven Young, I. The charge of misconduct came to the attention of the Bar Association in October of 1987 when Karen Miller filed a complaint with the Committee on Professional Responsibility. A copy of the complaint was sent to respondent who replied by asserting his fifth amendment privilege against self-incrimination. After conducts ing an investigation, the Committee sent to respondent notice of one specification of misconduct and notice of a formal investigatory hearing. The specification alleged:
“That you were retained in 1986 to represent the interests of one Karen Miller in a matter involving personal injury. That you did reach a settlement in this matter and did receive on or about December 18, 1986 an All State Insurance Company draft in the amount of $1,718.00 made payable to Steven Young and his client, Karen Miller. That you did fail, neglect, and refuse to present said draft to Karen Miller for her endorsement. Karen Miller’s endorsement was forged onto the rear of said draft either by you or with your knowledge. That said draft was not deposited and/or maintained in an identifiable trust account by you. That you have failed, neglected, and refused to account to your client for the settlement draft and you have commingled and converted the funds belonging to your client to your own use in violation of Disciplinary Rules DR 9-102(A)(B), and DR 1-102(A)(1)(3)(4)(5)(6) of the Code of Professional Responsibility of the Louisiana State Bar Association and Rules 1.15 and 8.4(a)(b)(c)(d) of the Rules of Professional Conduct of the Louisiana State Bar Association.”[1]
The formal investigatory hearing was held on May 2,1989. Respondent appeared at the hearing, but was not represented by counsel. He participated in the proceedings, but offered no explanation of his conduct or evidence in defense of the charges against him. In an unsworn statement, respondent stated that no funds were owed the complainant. Karen Miller failed to appear. Following this hearing, the Committee on Professional Responsibility, by unanimous vote, was of the opinion that respondent was guilty of serious mis *1020 conduct described in the Specification of Misconduct.
The Committee filed a Petition for Disciplinary Action in this court on June 23, 1988. On July 19, 1988, respondent answered, denying the allegations contained in the charges and averring that he was entitled to the entire settlement draft because he had paid complainant approximately $1500.00 prior to reaching the settlement. Upon motion by the Committee, filed on July 19, 1988, we appointed a commissioner to take evidence and report to us his findings of fact and conclusions of law.
Respondent was sent notice of the Commissioner’s Hearing scheduled for December 2, 1988. On December 1, 1988, respondent’s defense took an abrupt turn. He filed with the Commissioner a handwritten document entitled “Voluntary Confession of Judgment,” in which he stated that he had indeed misappropriated funds belonging to the client. This document, referred to by respondent as an amended answer, includes the following written confession:
“Respondent admits that he was retained in 1986 to represent the interests of one Karen Miller in a matter involving a personal injury to Karen Miller; that he did reach a settlement in this matter and did receive on or about December 10, 1986 ... an Allstate Insurance Company draft to Karen Miller and her attorney, Steven Young, I, in the amount of $1,718.00; that he did fail, neglect, and refuse to present said draft to Karen Miller for her endorsement; that Karen Miller’s endorsement was forged onto the rear of said draft by respondent Steven Young, I; that said draft was not deposited and/or maintained in an identifiable trust account by him; that on March 31, 1988 he had failed, neglected and refused to account to Karen Miller for the settlement draft and had commingled these funds with his personal funds and had used them for his own personal use without the authorization of Karen Miller.”
Respondent further admitted that he was not entitled to the entire $1718.00 and that he had paid Karen Miller only $125.00 prior to the settlement, not $1,500.00 as previously stated in his original answer and in his unsworn statement at the Committee Hearing.
In view of these admissions, the Commissioner, respondent and the attorney for the Committee on Professional Responsibility decided that it would not be necessary for either party to attend the Commissioner’s Hearing. On the scheduled date of the hearing, the evidence which had previously been taken in the matter, along with all pleadings and documents, including the December 1, 1988 answer prepared and filed by respondent, was introduced into the record by the Commissioner. Subsequently, the Commissioner filed with this court his findings of fact, conclusions of law, and a recommendation that respondent be suspended from the practice of law and not disbarred.
Respondent generally concurred in the Commissioner’s findings of fact and conclusions of law, reserving his right to argue the facts and law in brief and oral arguments. The Committee on Professional Responsibility concurred in the Commissioner’s findings and recommended a two year suspension from the practice of law. Re-. spondent and the Committee submitted briefs to this court, and the matter was submitted for our determination.
The Commissioner’s findings of fact are supported by the record and we adopt them as our own. The evidence shows that respondent was employed by Karen Miller, a family friend, to represent her in a claim for damages suffered in an automobile accident which occurred on May 27, 1986. On December 10, 1986, a draft was issued by Allstate Insurance Company in settlement of Ms. Miller’s claim in the amount of $1,718.00 payable to “Steven Young, I, and his client, Karen Miller.” Ms. Miller’s name was written on the back of the draft by respondent, which constitutes a forgery of her signature. Respondent also wrote his own name on the draft, then deposited the draft in his law office account. Neither the draft, nor the funds from it, were maintained in an identifiable trust account and the funds were commingled with the funds *1021 of respondent’s, and were thereafter converted to his own use. Respondent did not account to Ms. Miller for her share of the settlement.
Although Respondent originally denied the allegations in the charges and offered no explanation of his conduct or evidence in defense of the charges, he later filed an amended answer which served as a confession admitting the allegations of fact contained in the Specification of Misconduct. At this same time, December 1, 1988, he stated that he remitted to Ms. Miller a bank money order, dated April 20, 1988, in the amount of $1,368.00. The Committee concedes that restitution was made. The money order was redeemed on May 6, 1988.
The Commissioner’s conclusions of law are sound. Respondent is guilty of misconduct in violation of DR 1-102(A)(1)(3)(4)(5)(6)[2] and failure to preserve the identity of his client’s property in violation of DR 9-102(A) and (B).[3]
The misconduct in this case is serious, and this court must determine the appropriate discipline. We find that respondent acted in bad faith and intended a result inconsistent with his client’s interest. He forged his client’s endorsement on the settlement draft. Respondent benefited from the infraction. On the other hand, he did make restitution, although sixteen months afer the conversion. In retrospect, the client was, therefore, not greatly harmed.
With the application of the Hinrichs standard, the lawyer’s conduct in this case, standing alone, would normally give rise to a three year suspension. LSBA v. Hinrichs, 486 So.2d 116 (La.1986). However, when imposing disciplinary sanctions, this court must consider not only the seriousness of the offense but also the existence of aggravating and mitigating factors.
There are several aggravating factors present: a dishonest or selfish motive, vul-nerablility of the victim, and submission of false statements during the disciplinary process. A.B.A. Standards for Imposing Lawyer Sanctions § 3.0 (1986). It is important to note that the false statements may not have been discovered but for respondent’s confession, because Karen Miller failed to appear at the Committee hearing and she lived out of the state.
Some mitigating factors are present. Respondent has been practicing law since 1972, and there has never been any other disciplinary action against him. The Committee on Professional Responsibility was not burdened with having to prove their case, because respondent admitted to his guilt. Voluntary disclosure of misconduct is a strong mitigating factor, LSBA v. Stewart, 500 So.2d 360 (La.1987), and that was present here. On the other hand, that factor is substantially offset by the fact that it followed two attempts to deceive the Committee during the disciplinary process.
Respondent’s confession indicates remorse and suggests rehabilitation. Numerous letters from friends and associates *1022 are present in the record and attest to respondent’s good character and reputation in the community. Respondent states in brief that this disciplinary violation would never have occurred but for his suffering from a substance abuse condition from which he is now rehabilitated.[4] He further states that he has recently “dedicated his life to Christ.”
Considering the conduct under review and the aggravating and mitigating factors present in this case, we conclude that a two year suspension from the practice of law is appropriate.
DECREE
For the reasons assigned, it is ordered, adjudged and decreed that Steven Young, I be suspended from the practice of law for a period of two years, effective upon the finality of this decision.

 HALL, Associate Justice ad hoc, sitting for Associate Justice LEMMON, not participating.

. The Rules of Professional Conduct replaced the Code of Professional Responsibility, effective January 1, 1987. The alleged violation in this case occurred before the effective date. Rules 1.15 and 8.4 of the Rules of Professional Conduct contain the subject matter of Disciplinary Rules 9-102 and 1-102, respectively.

. DR 1-102. Misconduct.
(A) A lawyer shall not:
(1) Violate a Disciplinary Rule.
(2) Circumvent a Disciplinary Rule through the actions of another.
(3) Engage in illegal conduct involving moral turpitude.
(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
(5) Engage in conduct which is prejudicial to the administration of justice.
(6) Engage in any other conduct that adversely reflects on his fitness to practice law.

. DR 9-102. Preserving Identity of Funds and Property of a Client.
(A) All funds of a client paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein....
(B) A lawyer shall:
(1) Promptly notify a client of the receipt of his funds, securities, or other properties.
(2) Identify and label securities and properties of a client promptly upon receipt and place them in a safe deposit box or other place of safekeeping as soon as practicable.
(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.
(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive.

. The only evidence that respondent was suffering from a substance abuse condition and that he has since been rehabilitated comes from respondent himself in his brief to this court. In that brief, we are not told what substance he used. Unlike the respondent in LSBA v. Longenecker, 538 So.2d 156 (La.1989), there is no objective evidence by a psychologist or anyone else that respondent in this case was suffering from a substance abuse-induced psychosis, that he has not abused any substances since, or that he is participating in a substance abuse program. Furthermore, respondent is not, as is Longenecker, providing a valuable public service by counseling other attorneys with the same problem, as far as the record shows.