ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.
This disciplinary matter arises from formal charges filed by the Office of Disci *27 plinary Counsel (“ODC”) against respondent, Steven Young, I, an attorney licensed to practice law in the State of Louisiana.
UNDERLYING FACTS

Williams Matter

In 1995, respondent was appointed by Judge Bonnie Jackson of the Nineteenth Judicial District Court for the Parish of East Baton Rouge to represent Adam Williams in connection with armed robbery charges. During the course of his investigation of the case, respondent became convinced Mr. Williams was guilty and intended to take the stand in his own defense and testify falsely. On the day trial commenced, respondent filed a motion to withdraw. In his motion, respondent asserted that “[a] trial in this matter is a waste of time as there is no possibility, in [respondent’s] mind, for the State not to prove beyond a reasonable doubt the guilt of Mr. Williams....” Respondent further maintained that he “forever foresakes the taking of another criminal case as the possibility of these specific conflicts are far more likely to occur before the criminal bar than before the civil bar.”
| Judge Jackson denied respondent’s motion to withdraw and jury selection commenced.[1] Respondent declined to participate in voir dire. As a result, Judge Jackson dismissed the jury. At Mr. Williams’ request, Judge Jackson removed respondent and appointed new counsel, re-suiting in a further delay in the matter while the newly appointed counsel became familiarized with the case. Subsequently, in open court, Judge Jackson advised respondent he was barred from representing another criminal defendant in her court.

Vincent Matter

In 1998, Carl Vincent retained respondent to represent him in criminal proceedings involving charges of simple kidnaping and forcible rape. Mr. Vincent’s case was allotted to Judge Jackson.[2]
Four days before Mr. Vincent’s trial was scheduled to begin, respondent filed a motion for a continuance. In the motion, respondent admitted that he failed to prepare for trial, because he did not believe the case would ever go to trial.[3] Respondent further stated that Mr. Vincent faded to pay him for collect calls made by Mr. Vincent to respondent. Respondent was “adamant about not doing anymore [sic] work on the defendant’s case ... until he paid his bill.”
Judge Jackson granted respondent’s motion for continuance and rescheduled the trial. Several months later, as the trial date approached, respondent advised Mr. Vincent, who had by that time been incarcerated for approximately one year, that he |8was unprepared for trial because he was still investigating information concerning whether the victim had consented to sexual relations with Mr. Vincent.[4]
*28 Apparently, respondent believed that Judge Jackson would not be receptive to another motion for continuance. Instead, respondent assisted Mr. Vincent in filing a pro-se motion entitled “Motion to Terminate Attorney; Motion for Continuance; Motion for Appointment of Attorney; Motion for the Right and Time for Newly Appointed Attorney to File Necessary Papers to Protect his Right to Consent Defense.” The court granted Mr. Vincent’s requests and removed respondent as his representing counsel and a new attorney was appointed, once again delaying the disposition of the criminal proceedings.
DISCIPLINARY PROCEEDINGS

Formal Charges

Shortly after respondent’s removal in the Vincent proceedings, Judge Jackson sent a letter to the ODC expressing her concerns relative to respondent’s mishandling of the two criminal matters in her court.[5] After investigation, the ODC filed one count of formal charges against respondent alleging violations of Rules 1.1(a) (incompetence), 1.2(a) (scope of representation), 1.3 (lack of diligence), 1.4 (failure to communicate with client), 1.7(b) (attorney conflict of interest adversely reflecting client representation), 3.2 (failure to expedite litigation), 8.4(a) (violating the Rules of 1 ¿Professional Conduct) and 8.4(d) (engaging in conduct prejudicial to the administration of justice) of the Rules of Professional Conduct.
Respondent filed an answer to the formal charges denying any misconduct on his part. A formal hearing was held before the committee. The ODC introduced documentary evidence, including documents from the underlying criminal proceedings and Judge Jackson’s deposition. Respondent appeared at the hearing and testified on his own behalf.

Recommendation of the Hearing Committee

Following the formal hearing, the hearing committee concluded respondent’s handling of the Williams matter did “not rise to the level of actionable attorney misconduct.” It reasoned respondent found himself in a dilemma as to whether or not he should allow his client to take the witness stand and knowingly give false testimony, or whether or not he should withdraw from the case. As to the Vincent matter, the committee recognized respondent admitted he failed to adequately prepare for the trial and, as such, violated Rule 1.1(a). It also found respondent violated Rules 8.4(a) and 8.4(d), reasoning his attempts to delay the trial based on his failure to prepare constituted conduct prejudicial to the administration of justice. The hearing committee found insufficient evidence to support the other formal charges.
The committee did not cite any formal aggravating or mitigating factors. However, as an apparent mitigating factor, it observed that respondent’s actions stemmed “largely from his own set of moral principles, which often time may seemingly conflict with the duties of a lawyer and the representation of criminal clients.”
Is As a sanction, the committee recommended that respondent be suspended from the practice of criminal law for a period of two months followed by a six-month period of supervised probation.
Both respondent and the ODC filed an objection to the hearing committee’s proposed sanction.

*29
Recommendation of the Disciplinary Board

The board adopted the factual findings of the hearing committee in their entirety. However, the board’s legal findings differed from that of the committee. As to the Williams matter, the board determined that, although respondent had good cause to discontinue the representation of Mr. Williams, his motion to withdraw was denied. The board recognized respondent had a professional obligation to continue his representation of his client and breached that obligation when he failed to participate in the voir dire process or proceed with the trial.[6] The board reasoned respondent’s actions in this regard constituted a violation of Rules 8.4(a) and 8.4(d) because they were prejudicial to the administration of justice. It also concluded respondent violated his duty to provide competent representation under Rule 1.1(a) with respect to his statements in his motion to withdraw that the trial was a “waste of time” and there was no possibility in his mind “for the State not to prove beyond a reasonable doubt the guilt of Mr. Williams.”[7] As to the Vincent matter, the board agreed with the committee 1 fithat respondent’s efforts to file motions as delay tactics violated Rules 8.4(a) and 8.4(d), finding that these actions, like his actions in the Williams matter, were prejudicial to the administration of justice.[8]
The board found respondent knowingly violated duties owed to his clients, the legal system and the legal profession, causing actual injury to his clients and the legal system by unnecessarily delaying the legal process. Additionally, although Mr. Williams later pled guilty as charged, the board concluded respondent's failure to proceed with the representation exposed his client to the potential harm of being unnecessarily incarcerated for an additional period of time.
In aggravation, the board cited respondent’s prior disciplinary offenses,[9] multiple *30 offenses and substantial experience in the practice of law.[10] The board did not identify any mitigating factors.
The board relied on the ABA’s Standards for Imposing Lawyer Sanctions to conclude the appropriate baseline sanction for respondent’s misconduct is ^suspension.[11] Considering the facts of this case, the board recommended respondent be suspended from the practice of law for a period of six months.
Respondent filed an objection to the board’s findings and recommendation. Accordingly, the matter was docketed for briefing and argument in accordance with Supreme Court Rule XIX, § 11(G).
DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343, 348; Louisiana State Bar Ass’n v. Boutall, 597 So.2d 444, 445 (La.1992).
Our review of the record demonstrates that the ODC proved by clear and convincing evidence the allegations of professional misconduct. In the Williams matter, respondent violated his duty under Rule 1.1(a) to provide competent representation when he indicated that it was a “waste of time” for Mr. Williams’ case to proceed to trial and refused to participate in the voir dire process. It is well-settled that an indigent defendant such as Mr. Williams is entitled to the “guiding hand of counsel” during criminal proceedings. McCoy v. Court of Appeals of Wisconsin, 486 U.S. 429, 108 S.Ct. 1895, 100 L.Ed.2d 440 (1988) (citing Powell v. Alabama, 287 U.S. 45, 68-69, 53 S.Ct. 55, 77 L.Ed. 158 (1932)). Even though respondent may have concluded Mr. Williams did not have a viable defense, ^respondent continues to have a duty to represent him in a competent fashion. See United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984).[12] Under these circumstances, we conclude that respondent’s actions in the Williams matter constitute a violation of Rule 1.1(a).[13]
*31 In the Vincent matter, it is clear respondent’s actions were calculated to delay the trial. When it became apparent to respondent that the trial court would not grant a second motion for continuance, respondent drafted a motion (purportedly prepared by Mr. Vincent on a pro-se basis) which made it appear Mr. Vincent was terminating respondent’s services. Through this artifice, respondent forced the trial court to grant a continuance.
While respondent’s motivation may have been to protect the interests of his client, he may not violate his professional obligations as an officer of the court under the guise of being a zealous advocate. Respondent had a duty to present the facts to the trial court and allow the trial court to make an informed ruling on the continuance |aissue. In the event of an adverse ruling, respondent could then have sought review in a higher court. His failure to follow these basic rules demonstrates he engaged in conduct prejudicial to the administration of justice, in violation of Rule 8.4(d).
Having found evidence of professional misconduct, we now turn to the issue of an appropriate sanction. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 518 So.2d 1178 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
Respondent’s misconduct caused actual harm to the administration of justice and created a great potential of harm to the interests of his clients. The baseline sanction for this misconduct under Standard 7.12 of the ABA’s Standards for Imposing Lawyer Sanctions is a suspension from the practice of law.
As aggravating factors, we recognize respondent’s substantial experience in the practice of law, his prior disciplinary record and the presence of multiple offenses. While the hearing committee and disciplinary board did not identify any mitigating factors, we finds the record reveals respondent had an absence of dishonest or selfish motive. We give significant weight to this mitigating factor, as we are convinced respondent did not intend any harm to his clients or the judicial system; rather his actions were motivated by his lack of understanding of the professional rules and his belief that he was acting in the best interests of his clients.
Accordingly, we conclude the appropriate sanction for respondent’s misconduct is a six-month suspension from the practice of law. However, in light of |10the mitigating circumstances, we will defer all but two months of this suspension. Following the completion of the active portion of his suspension, respondent shall be placed on pro *32 bation for a period of six months, subject to the following conditions:
(1) During the period of probation, respondent shall be supervised by a practice monitor to be appointed by the ODC;
(2) Respondent shall attend and successfully complete the Ethics School program sponsored by the Louisiana State Bar Association.
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that respondent, Steven Young, I, Louisiana Bar Roll No. 13765, be suspended from the practice of law for a period of six months. It is further ordered that all but two months of this suspension shall be deferred. Following the completion of the active portion of this suspension, respondent shall be placed on probation for a period of six months, subject to the conditions identified in this opinion. Any violation of the conditions of probation or any other misconduct during the probationary period may be grounds for making the deferred portion of the suspension execu-tory, or imposing additional discipline, as appropriate. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.
VICTORY, J., dissents and would follow the Board’s recommendation as to sanction.
KNOLL, J., concurs with reasons.

. Respondent sought supervisory review of the trial court's ruling. The court of appeal denied respondent’s application for writs.

. Respondent received Judge Jackson's consent to handle the case after he had advised her, following the Williams matter, that he had resolved his personal conflicts as it affected his practice of criminal law.

. According to respondent, Mr. Vincent led him to believe the alleged victim would recant her statements against the client and the matter would not proceed to trial.

.As stated, Mr. Vincent was charged with rape and kidnaping. Shortly before the rescheduled trial date, respondent allegedly learned for the first time that the alleged rape victim's minor son had entered the home at the time Mr. Vincent and the victim were having sexual relations. Respondent asserted he needed additional time to interview the boy, who supposedly would testify his mother consented to the encounter with Mr. Vincent.

. In her letter, Judge Jackson stated that she was not filing a complaint against respondent, but requested some "intervention or counseling" to assist him.

. The board noted respondent had an obligation to continue the representation following the unfavorable ruling on his motion to terminate the representation. In support, the board relied on Rule 1.16(c), which provides, "[w]hen ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation.” While the board concluded respondent breached the rule when he failed to participate in the voir dire process or proceed with the trial, it recognized respondent had not been formally charged with Rule 1.16(c).

. As to the Williams matter, the board found insufficient evidence of a violation of Rule 1.7(b) since respondent properly attempted to withdraw from the representation based on a conflict of interest. It also found no evidence of violations of neglect or failure to expedite Mr. Williams’ case, in violation of Rules 1.3 and 3.2, respectively, since respondent took measures on behalf of his client by attempting to locate witnesses, meeting with his client who was incarcerated and attempting to reach a plea agreement with the district attorney. Finally, without citing any reasons, the board concluded there was no violation of Rules 1.2(a) and 1.4.

. As to the Vincent matter, the board found insufficient evidence of violations of Rules 1.3 and 3.2, citing respondent's diligent efforts on behalf of his client to expedite the litigation, which included locating and interviewing witnesses, filing pleadings and meeting with the assistant district attorney. Additionally, the board found no evidence respondent was incompetent, in violation of Rule 1.1(a), in the Vincent matter. In support, the board reasoned that although respondent’s motion for continuance alleged he had not prepared for trial, he later admitted this motion and the later motion he prepared for his client were filed as a delay tactic because of his need to investigate potentially favorable evidence discovered just days before trial was scheduled to begin. Finally, the board found insufficient evidence to support violations of Rules 1.2(a), 1.4 and 1.7(b).

. In 1989, respondent was suspended from the practice of law for endorsing a client's name to the back of a joint check and con *30 verting the funds to his own use. Louisiana State Bar Ass’n v. Young, 545 So.2d 1018 (La.1989). In 1999, respondent was admonished by the disciplinary board, though the grounds for the admonition are not clear from the record.

. Respondent was admitted to the practice of law in Louisiana in 1976.

. Standard 4.52 provides suspension is generally appropriate when a lawyer engages in an area of practice in which the lawyer knows he or she is not competent, and causes injury or potential injury. Standard 7.12 provides suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession, and causes serious or potentially serious injury to a client, the public, or the legal system.

. In Cronic, the Court stated:
Of course, the Sixth Amendment does not require that counsel do what is impossible or unethical. If there is no bona fide defense to the charge, counsel cannot create one and may disserve the interests of his client by attempting a useless charade. See Nichols v. Gagnon, 454 F.2d 467, 472 (C.A.7 1971), cert. denied, 408 U.S. 925, 92 S.Ct. 2504, 33 L.Ed.2d 336 (1972). At the same time, even when no theory of defense is available, if the decision to stand trial has been made, counsel must hold the prosecution to its heavy burden of proof beyond reasonable doubt. And, of course, even when there is a bona fide defense, counsel may still advise his client to plead guilty if that advice falls within the range of reasonable competence under the circumstances.

.In oral argument, respondent suggested his true reason for seeking to withdraw was that his client intended to perjure himself at *31 trial. We question whether there is support for this contention in the record. However, even assuming respondent's allegations are true, he should have first sought to dissuade his client from giving perjured testimony. See, e.g., Nix v. Whiteside, 475 U.S. 157, 175-176, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986). If the client persisted in his criminal or fraudulent conduct, respondent could have moved to withdraw based on Rule 1.16(b)(1) (a lawyer may withdraw if the client "persists in a course of action involving the lawyer's services that the lawyer believes is criminal or fraudulent”). Respondent’s motion to withdraw, based on the theory that it was a "waste of time” to go to trial, obviously did not satisfy the requirements of this rule.