930 So.2d 897 (2006)
In re George E. DOWNING.
No. 2005-B-1553.
Supreme Court of Louisiana.
May 17, 2006.
*898 Charles B. Plattsmier, James T. Daly, Baton Rouge, for applicant.
Harley M. Brown, Baton Rouge, George E. Downing, Jr., for respondent.

ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.
This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, George E. Downing, an attorney licensed to practice law in Louisiana.

UNDERLYING FACTS
In July 2002, respondent enrolled as counsel of record for Timothy Martin ("Timothy") in an ongoing child custody and visitation matter entitled Timothy Martin v. Debra Milton Martin, No. 34,-222 on the docket of the 18th Judicial District Court for the Parish of Pointe Coupee. Timothy's ex-wife, Debra Martin ("Debra"), was represented in the matter by attorney Paula Hartley Clayton.
By court order, Timothy and Debra shared joint legal custody of their two children. The joint custody plan granted domiciliary custody of the children to Debra and specific visitation rights to Timothy. On August 19, 2002, respondent filed an ex parte Motion for Civil Warrant on Timothy's behalf, alleging that Debra was refusing to allow Timothy to exercise his visitation rights. The court issued the civil warrant on August 30, 2002, ordering law enforcement authorities to "enforce the visitation rights of Timoth [sic] Martin and his minor children." At approximately 10:00 p.m. that evening, Timothy went to Debra's residence with two police officers to advise her of the civil warrant and enforce his visitation rights; however, the children did not wish to go with their father and the officers did not force them to do so.
Thereafter, Timothy falsely informed respondent that Debra had refused to allow the children to go with him. Without verifying Timothy's assertions, respondent *899 filed an ex parte Motion and Order for Arrest of Party, requesting that the court issue a warrant for Debra's arrest due to her alleged failure to comply with the civil warrant. The motion was supported by Timothy's affidavit attesting that Debra had refused to allow the children to go with him when the civil warrant was presented. On September 10, 2002, without a hearing, the court issued a bench warrant ordering Debra's arrest. Debra was arrested at her place of employment in Iberville Parish at approximately 4:00 p.m. that day and spent almost twenty-four hours in jail before the court vacated the warrant on September 11, 2002.
After Debra was released from jail, Ms. Clayton filed a complaint against respondent with the ODC, alleging misconduct on respondent's part due to his filing of the ex parte motions without service or notice to her or Debra. She also pointed out numerous defects and misrepresentations in respondent's motions, and contended that his "ill practices, lack of diligence and unprofessionalism" had resulted in Debra's spending nearly twenty-four hours in jail.
In response to the complaint, respondent stated that Timothy told him that Debra had prevented him from exercising his visitation rights despite a court order. Respondent contacted Ms. Hartley concerning the matter, and she informed him that she was having difficulty reaching her client and was considering withdrawing from the representation. Respondent then consulted another attorney for advice on how to proceed, and was advised that a civil warrant could be utilized. Timothy later signed a sworn affidavit stating that Debra had refused to honor the civil warrant. Considering that a court order had been "openly refused," as well as Timothy's sworn affidavit, respondent presented the Motion and Order for Arrest of Party to the trial judge for consideration. Following Debra's arrest, respondent learned that Debra had not refused to honor the civil warrant, but that the children had expressed a desire not to leave with their father. Respondent confronted Timothy with this information, and in turn, Timothy admitted to respondent that he may have been "mistaken" in stating that Debra refused to let the children go with him. Respondent indicated that he apologized to Ms. Clayton for the entire incident.
Respondent subsequently provided the ODC with a sworn statement. Respondent reiterated that when he filed the two motions, he believed Debra was an unrepresented party, even though he had not received notice that Ms. Clayton had withdrawn as Debra's counsel. He also stated that this was the first time he had encountered a situation wherein a party refused to comply with a court's visitation order. As such, he consulted another attorney, who advised him to utilize the civil warrant. When the civil warrant did not work to enforce the visitation, respondent again consulted the attorney, who advised him to seek Debra's arrest for her failure to comply with the civil warrant. Respondent conceded that he did not attempt to verify with the police officers that Debra had refused to allow the children to leave with Timothy. Instead, he relied entirely on Timothy's version of events.
Respondent admitted that the most common approach to a party's failure to comply with a visitation order is to file a rule for contempt and hold a hearing, whether or not the party is represented by counsel. He also agreed that because of the process he followed, Debra was jailed without the benefit of a hearing. Respondent further indicated this was the first time he had a party arrested for failure to comply with a visitation order but assured the ODC that if similar situations should arise in the *900 future, he would only utilize rules for contempt.
Finally, respondent implied that he had done nothing wrong because the judge who signed the order for Debra's arrest had reviewed the motion and had not denied it for being improper.

DISCIPLINARY PROCEEDINGS

Formal Charges
Following its investigation, the ODC filed one count of formal charges against respondent, alleging that his conduct in the Martin matter violated Rules 1.1(a) (failure to provide competent representation to a client) and 8.4(d) (engaging in conduct prejudicial to the administration of justice) of the Rules of Professional Conduct. Respondent answered the formal charges, essentially denying the allegations of misconduct.

Formal Hearing
This matter proceeded to a formal hearing on the merits, at which respondent and Debra testified. The parties also filed a joint stipulation concerning the testimony of Ms. Clayton and attorney Sydney Picou. The stipulation indicated that Ms. Clayton was Debra's counsel of record from May 1999 until 2003, but nevertheless, respondent did not provide Ms. Clayton with notice of the civil warrant or of the motion and order for Debra's arrest. The stipulation also indicated that Ms. Picou was retained to represent Debra immediately following her arrest on September 10, 2002 and continues to represent Debra in the domestic matter.
At the hearing, respondent testified that he communicated with Ms. Clayton and sent her a copy of his motion to enroll as Timothy's counsel, as well as a motion to set a status conference and rule date. However, Ms. Clayton subsequently informed respondent that she was having trouble contacting Debra, and that she may withdraw from the representation. Thereafter, when respondent requested the issuance of a warrant for Debra's arrest, he did not provide Ms. Clayton with notice. Respondent testified that he personally took the motion to the judge's office and left it for her review and signature, though he admitted he did not speak with the judge about the motion.
Debra testified that she never violated the visitation order, as Timothy alleged. In fact, they met every two weeks so that Timothy could pick up the children for weekend visits pursuant to the visitation plan. However, on one occasion, Timothy failed to show up at the designated time and location, and on another occasion, he picked up the children for a weekend visit and kept them for three weeks.
Because of the latter incident, Debra believed Timothy's visitation rights had been suspended. Nonetheless, when Timothy arrived with the police and the civil warrant on August 30, 2002, she invited the officers in to wait while she told her children they had to go with Timothy. When the children indicated they did not want to go with their father, one of the officers spoke with the children, who again indicated they did not want to go. The officers then left without taking the children.
When Debra was later arrested, she stated that she was fingerprinted, had her mug shot taken, had to change into a prison uniform, and was placed into a cell with seven other inmates. She stayed in jail for twenty-three and a half hours. Debra described her imprisonment as a "living nightmare" and a "horrible experience." She was worried about her children and embarrassed about being arrested at her place of employment. She further indicated that her employment required a background check every five years, and the arrest caused repercussions in that her employer had to verify *901 she had not violated the law. In August 2003, Debra filed a civil suit against Timothy and respondent, seeking damages for false arrest.

Hearing Committee Recommendation
After considering this matter, the hearing committee made factual findings as follows:
Respondent's Motion for Civil Warrant, filed on August 19, 2002, did not indicate a copy was served upon or mailed to Ms. Clayton or Debra, nor was a hearing held. Furthermore, respondent admitted that he did not provide Ms. Clayton or Debra with a copy of the motion and admitted that he obtained the civil warrant on an ex parte basis.
On August 27, 2002, respondent filed a motion to set a status conference and also asked the court to re-fix for hearing pending issues of contempt of court, visitation, and custody, which had previously been passed or continued by the court. The motion contained a certificate indicating respondent mailed a copy of same to all counsel of record.
On August 30, 2002, police officers went to Debra's residence with Timothy to enforce the civil warrant. After speaking with the children, the officers did not enforce the warrant because the children did not want to go with their father. As such, Timothy's efforts to utilize the civil warrant to enforce his visitation rights failed.
On September 10, 2002, respondent filed a Motion and Order for Arrest of Party, in which he represented to the court that Debra would not release the children on August 30, 2002. The motion requested the issuance of a warrant for Debra's arrest for her failure to comply with the civil warrant. The motion contained no certification that it was forwarded to Debra's counsel. The court issued a bench warrant for Debra's arrest the same day respondent filed the motion. Respondent admitted he obtained the arrest warrant on an ex parte basis. The same day the bench warrant was issued, Debra was arrested at her place of employment in Iberville Parish and held as a fugitive from Pointe Coupee Parish. She was booked, fingerprinted, photographed, and placed into a jail uniform. She was also put into a cell with seven other inmates and stayed in prison for approximately twenty-three and a half hours. On September 11, 2002, the court executed an order vacating the previous warrants and ordering the police to assist in the return of the children to Debra.
Based on these factual findings and considering La. R.S. 9:343,[1] the hearing committee determined that respondent did not have the authority to obtain the ex parte civil warrant. The representations in the motion and the attached affidavit by Timothy were contrary to the statute's provisions, and respondent knew or should have known Timothy was not entitled to utilize a civil warrant under the circumstances of the case.
The committee also determined that respondent's motion seeking Debra's arrest was improper because it was based on her failure to comply with the civil warrant. *902 However, the civil warrant was directed not to Debra but to law enforcement agencies. Even if the civil warrant had been appropriate in the first instance, the representations in respondent's motion were inappropriate, inaccurate, and misleading.
Finally, the committee determined that there is no legal authority which allows a party to obtain an arrest warrant of his or her opponent on an ex parte basis. Rather, the appropriate method to enforce a court order is through contempt proceedings. Pursuant to La.Code Civ. P. art. 225,[2] Debra could only be found in contempt of court after notice and an evidentiary hearing wherein she had the opportunity to defend herself. The ex parte nature of the motion for arrest violated the due process mandate of the United States and Louisiana Constitutions.
Based on these findings, the committee concluded that respondent violated Rules 1.1(a) and 8.4(d) of the Rules of Professional Conduct. The committee determined that respondent acted negligently but harmed Debra by facilitating her arrest and harmed Timothy by exposing him to a civil claim for damages for Debra's wrongful arrest. According to the ABA's Standards for Imposing Lawyer Sanctions, the baseline sanction for respondent's misconduct is a public reprimand.
Aggravating factors found by the committee were refusal to acknowledge the wrongful nature of the conduct, vulnerability of the victim, and substantial experience in the practice of law (admitted 1988). The committee also took into account two prior disciplinary complaints filed against respondent, which were later dismissed by the ODC. Finally, the committee noted respondent's lack of remorse.[3] In mitigation, the committee found the absence of a serious prior disciplinary record, absence of a dishonest or selfish motive, and full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings.
Under these circumstances, the committee recommended that respondent be publicly reprimanded.
Neither respondent nor the ODC filed an objection to the hearing committee's recommendation.

Disciplinary Board Recommendation
After reviewing this matter, the disciplinary board determined that the hearing committee's factual findings are not manifestly erroneous. The board found that respondent improperly obtained both the civil warrant and the arrest warrant on an ex parte basis. Respondent's use of La. R.S. 9:343 to obtain the civil warrant was contrary to the dictates of the law. He relied upon the statute in circumstances involving parents with joint custody when the statute only applies to circumstances in which a custodial parent seeks to obtain the return of his or her children from a *903 non-custodial parent. Furthermore, respondent failed to provide notice of the filing of the motion to Debra or her counsel, Ms. Clayton.
The board also found that the motion for Debra's arrest was based on inaccurate and misleading allegations. In the motion, respondent represented to the court that Debra failed to honor the civil warrant and would not release the children to Timothy. This representation was misleading in that it was the police officers who did not enforce the warrant after speaking with the children who indicated that they did not want to leave with their father. Once again, respondent failed to provide Debra or Ms. Clayton with notice of the filing of this motion.
Additionally, the board agreed with the committee's finding that the appropriate method to enforce the joint custody plan is through contempt proceedings, not through the use of La. R.S. 9:343 or a motion to arrest a party. The board also agreed with the committee that the ex parte nature of the motion for arrest violated the due process mandate of the United States and Louisiana Constitutions.
Finally, the board found that respondent's preparation for filing the two motions consisted of calling another attorney and receiving advice from that attorney on how to proceed. The board determined that respondent's reliance on the advice he received was clearly misplaced and caused significant injury to Debra. Respondent violated Rule 1.1(a) because he failed to provide competent representation to Timothy. Moreover, by obtaining the civil and arrest warrants in an ex parte and improper manner, respondent violated Rule 8.4(d). As a result of respondent's actions, Debra was denied her right to due process and was unjustly incarcerated.
The board determined that respondent violated duties owed to his client, the public (namely Debra), and the legal system. He acted negligently but caused very significant actual injury in the form of Debra's unjust incarceration without the benefit of due process. Furthermore, Debra was arrested at her place of employment, a security-sensitive strategic petroleum reserve, which could have easily jeopardized her employment. Finally, respondent's actions caused Timothy to be sued by Debra for wrongful arrest.
As aggravating factors, the board identified respondent's refusal to acknowledge the wrongful nature of the conduct, vulnerability of the victim, substantial experience in the practice of law, and lack of remorse. The board noted that the hearing committee erred in finding the aggravating factor of prior disciplinary offenses, based upon respondent's two prior dismissed disciplinary complaints. As mitigating factors, the board found the absence of a prior disciplinary record, absence of a dishonest or selfish motive, and full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings.
In determining an appropriate sanction, the board looked to this court's prior jurisprudence and noted that violations of Rules 1.1(a) and 8.4(d) generally warrant brief suspensions, especially when numerous aggravating factors are present. Considering In re: Young, 03-0274 (La.6/27/03), 849 So.2d 25,[4] but noting that the instant matter involves only one count of misconduct, the board recommended that respondent be suspended from the practice of law for three months, fully deferred.
Neither respondent nor the ODC filed an objection to the disciplinary board's *904 recommendation; however, the court on its own motion docketed the matter for briefing and oral argument in accordance with Supreme Court Rule XIX, § 11(G)(1)(a).

DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343; Louisiana State Bar Ass'n v. Boutall, 597 So.2d 444 (La.1992). While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee's factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
The formal charges allege, and we agree, that respondent acted incompetently in filing ex parte motions for a civil warrant and arrest of Debra. The record as a whole suggests that respondent's actions were negligent, resulting from his lack of understanding of the relevant procedures in custody cases, and were not the result of any improper motive. Nonetheless, respondent's failure to research the law resulted in the improper arrest of Debra and exposed Timothy to a lawsuit by his ex-wife. We find that respondent's conduct violated Rule 1.1(a) of the Rules of Professional Conduct and was prejudicial to the administration of justice, in violation of Rule 8.4(d).[5]
Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent's actions. In considering that issue, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass'n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass'n v. Whittington, 459 So.2d 520 (La.1984).
The jurisprudence of this court indicates that a short suspension is the appropriate discipline for failure to render competent representation. See, e.g., In re: Young, 03-0274 (La.6/27/03), 849 So.2d 25 (attorney suspended for six months, with all but two months deferred, followed by six months of probation with conditions, for two counts of misconduct involving violations of Rules 1.1(a) and 8.4(d)). Unlike Young, which involved multiple counts of misconduct, the instant case involves only a single count. Considering this fact, as well as the aggravating and mitigating factors present, we find the board's recommended sanction of a fully deferred three-month suspension is not unreasonable.
Accordingly, we will adopt the board's recommendation and suspend respondent from the practice of law for three months. *905 We will defer this suspension in its entirety and place respondent on unsupervised probation for three months, subject to the condition that any misconduct during this period may be grounds for making the deferred suspension executory, or imposing additional discipline, as appropriate.

DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that George E. Downing, Louisiana Bar Roll number 18589, be suspended from the practice of law for a period of three months. It is further ordered that the suspension shall be deferred in its entirety and respondent shall be placed on unsupervised probation for three months, subject to the condition that any misconduct during this period may be grounds for making the deferred suspension executory, or imposing additional discipline, as appropriate. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.
JOHNSON, J., dissents and assigns reasons.
KNOLL, J., concurs in part and dissents in part with reasons.
WEIMER, J., concurs with reasons.
JOHNSON, J. dissents and assigns reasons:
In my opinion, the professional misconduct herein requires an actual suspension from the practice of law.
Mr. Downing, without verifying his client's assertions, filed an Ex parte Motion and Order for the arrest of his client's spouse for failure to comply with the court's visitation order.
Not only were the assertions false, but the complainant, Mrs. Debra Martin, suffered a very significant actual injury when pursuant to the bench warrant, she was arrested at her place of employment in Iberville Parish. She was then booked, fingerprinted, photographed and jailed as a fugitive from Pointe Coupee Parish, for twenty-three hours.
Mrs. Martin was represented by counsel. Respondent suggests that he proceeded ex parte because Mrs. Martin's attorney, Paula Clayton, indicated that she would be withdrawing from the case.
In my mind, Mrs. Martin was clearly entitled to be heard in a court before being humiliated in this fashion.
KNOLL, J., concurring in part and dissenting in part.
I respectfully dissent from that portion of the majority's opinion which defers respondent's suspension in its entirety. In light of the harm occasioned by respondent's misconduct, I would impose some period of actual suspension.
WEIMER, J., concurring.
The hearing committee and disciplinary board found lack of remorse as an aggravating factor. In brief, Mr. Downing argues as follows:
Exhibit ODC 3, dated October 16, 2002, notified Mr. Downing of the complaint, and contained within ODC's letter were citations to Rule 8.1(b)(c), 8.4(g), and Rule XIX, § 9C reminding Mr. Downing of his duty to respond to a "request for information". Clearly, Mr. Downing was obligated to offer an explanation of the events surrounding the complaint. It appears quite wrong to demand information, and then use that response as a basis for an aggravating factor and accuse him of trying to shift blame.
*906 After reviewing the record, I have a concern about a finding of lack of remorse as an aggravating factor in this matter. Counsel for the Office of Disciplinary Counsel candidly acknowledged a similar concern at oral argument.
The record indicates Mr. Downing apologized to the attorney for Debra Martin and acknowledged in his sworn statement he should not have followed the procedures at issue and would not do so again in the future.
A lack of remorse should not be applied whenever one offers an explanation or mounts a defense. A lack of remorse should be applied to those who truly lack remorse in the face of obvious wrongdoing. This can be a difficult distinction to make in some matters; however, that distinction must be made so that the aggravating factor of a lack of remorse is appropriately applied.
This court's opinion does not specifically find a lack of remorse. Based on the record in this matter, I would reject a finding of a lack of remorse as an aggravating factor. I otherwise concur in the result.
NOTES
[1] La. R.S. 9:343, entitled "Return of child kept in violation of custody and visitation order," provides in pertinent part:

A. Upon presentation of a certified copy of a custody and visitation rights order rendered by a court of this state, together with the sworn affidavit of the custodial parent, the judge ... may issue a civil warrant directed to law enforcement authorities to return the child to the custodial parent pending further order of the court having jurisdiction over the matter.
The statute clearly does not apply to a visitation dispute between parents who have joint custody of their children, as did Timothy and Debra. Rather, the statute allows a custodial parent to obtain the return of his or her children from a non-custodial parent.
[2] La.Code Civ. P. art. 225 provides in pertinent part:

A. Except as otherwise provided by law, a person charged with committing a constructive contempt of court may be found guilty thereof and punished therefor only after the trial by the judge of a rule against him to show cause why he should not be adjudged guilty of contempt and punished accordingly....
[3] In noting respondent's lack of remorse, the committee observed:

Respondent attempts to place blame on Mr. Martin for lying in his affidavit and contends that justice was not prejudiced, in that the judge signed an improper arrest warrant. Respondent also alludes to the "seedier aspects of family law" in attempting to justify his actions. However, the law is quite clear regarding the issuance of civil warrants and contempt proceedings to enforce visitation privileges and Respondent chose not to follow the law. It appears that Respondent wishes to place blame everywhere but on himself.
[4] The respondent in Young was suspended for six months, with all but two months deferred, followed by six months of probation with conditions, for two counts of misconduct involving violations of Rules 1.1(a) and 8.4(d).
[5] The proscription against conduct that is prejudicial to the administration of justice most often applies to litigation-related misconduct. Louisiana State Bar Ass'n v. Harrington, 585 So.2d 514, 520, n. 4 (La.1990) (citing examples). However, Rule 8.4(d) also reaches conduct that is uncivil, undignified, or unprofessional, regardless of whether it is directly connected to a legal proceeding. See, e.g., In re: Ashy, 98-0662 (La.12/1/98), 721 So.2d 859 (attorney who made unwanted sexual advances toward a client was found to have violated Rule 8.4(d), among other provisions of the Rules of Professional Conduct).