# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**06-477**

**NEW SOUTH FEDERAL SAVINGS BANK**

**VERSUS**

**COMMONWEALTH LAND TITLE INSURANCE COMPANY, ET AL.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 219,999
HONORABLE HARRY RANDOW, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**MARC T. AMY
JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Oswald A. Decuir, Marc T. Amy, and Billy Howard Ezell, Judges.

**AFFIRMED.**

**William M. Ford**
**Post Office Box 12424**
**Alexandria, LA   71315-2424**
**(318) 442-8899**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **Commonwealth Land Title Insurance Company**

**James B. Reichman**
**Reichman & Armour**
**Post Office Box 210**
**Alexandria, LA   71309**
**(318) 442-3251**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
     **New South Federal Savings Bank**

AMY, Judge.

The plaintiff bank purchased a mortgage from the original lender. The mortgage had an error, in that it contained the physical address of one location and the legal description of another. The defendant title insurance company issued a policy for the mortgaged property. The plaintiff learned of the error when it attempted to foreclose on the property. Thereafter, it commenced this proceeding to recover under the title insurance policy. The trial court ruled in favor of the defendant, finding that, although the lender did not issue a mortgage on the property for which the physical address was provided, it issued a valid mortgage on the property for which the legal description was provided. The court found no title irregularities on the mortgaged property and, thus, no recovery under the title insurance policy. The plaintiff bank appeals. For the following reasons, we affirm.

**Factual and Procedural Background**

The record indicates that in October 2000, Memphis and Dorothy Willis applied to Southern Equity Lenders for a property mortgage. According to Bill Nichols, who then served as Southern Equity's Secretary Treasurer, it was assumed that the mortgage was to be taken on the Willises' residence, a house located at 351 Willis Flat Road, Glenmora, Louisiana.

Southern Equity contacted one of its approved attorneys for the purpose of closing the loan. The attorney, also an agent for Commonwealth Land Title Insurance Company, issued a short form title insurance policy on the property. According to Mr. Nichols, the decision as to whether to have a survey performed on the subject property was left to the discretion of the closing attorney. At trial, the attorney pointed out that Southern Equity's instructions as to closing did not indicate that a survey was requested. In any event, no survey was performed.

The mortgage was sold to the plaintiff, New South Federal Savings Bank, upon completion. After Mr. Willis's death and following default, New South commenced foreclosure proceedings. A survey completed as part of the foreclosure proceedings revealed that the physical address listed on the mortgage and the legal description of the property provided within the mortgage differed. Although the physical address was the Willis residence and it was the one supplied to Southern Equity through the mortgage application, the property at that address was not owned by Mr. and Mrs. Willis. Rather, it was owned by their son. The property for which the legal description was provided was owned by Mr. and Mrs. Willis, but it was an unimproved parcel of land located on Monk Road. Foreclosure proceedings on the Willis Flat Road property were suspended. There is no indication that foreclosure proceeded against the Monk Road property.

New South filed the instant matter, naming both the closing attorney and Commonwealth Land Title Insurance Company as defendants. While the closing attorney was dismissed on a successful exception of prescription/peremption, New South pursued Commonwealth for coverage under the title insurance policy issued in conjunction with the mortgage. New South sought recovery for losses stemming from what it alleged was a lack of clear title on the Willis Flat Road property. Commonwealth denied recovery. Prior to trial, Southern Equity repurchased the mortgage from New South.

The trial court found in favor of the insurer, concluding that recovery was not possible as the title to the property was not defective and, furthermore, a valid mortgage existed on the Monk Road property.[1] The validity of the mortgage is not

_____

[1] In reasons for ruling, the trial court explained:

2

an issue before the court and, therefore, is not considered herein. However, New

South has appealed the trial court's determination that the title insurance policy does

not provide coverage for its inability to foreclose on the Willis Flat Road property and

presents the following issues for review:

A. Did the variance between the erroneous property description and the correct municipal address; the acreage described and the actual acreage; and/or the absence of improvements on the described property constitute "adverse circumstances affecting the title" which would have been disclosed by an accurate survey, thus resulting in coverage under the title policy?

B. Should Commonwealth's policy be reformed to reflect insurance of title on the intended property?

---

In its argument for coverage Plaintiff relies on the language of the survey endorsement quoted above. Plaintiff argues that insuring the wrong property is an adverse circumstance which would have been disclosed by an accurate survey. The Court has found no Louisiana jurisprudence directly on point as to the interpretation of the survey endorsement. Furthermore, a search of the jurisprudence of other states has yielded no explanation. Therefore, the Court believes that this policy must be interpreted by looking at the plain meaning of the words used in the policy.

An insurance policy is to be enforced as written if the language in the policy is clear and unambiguous. Furthermore, if a policy is clear and unambiguous the courts have no authority to alter the terms of the policy. *Pareti v. Sentry Indemnity Company*, 536 So.2d 417 (La. 1988). When interpreting insurance contracts, the court's responsibility is to determine the parties' common intent. Such intent is to be determined in accordance with the general, ordinary, plain and popular meaning of the words used in the policy, unless the words have acquired a technical meaning. *Johnson v. Evan Hill Sugar Cooperative, Inc.*, 2001-2956 (La.App. 1 Cir. 12/30/02), 836 So.2d 484.

The Court does not find the wording of the survey endorsement to be ambiguous. The endorsement provides that New South will be insured for an "adverse circumstance" affecting the title which would have been detected by an accurate survey. The Court does not believe that insuring the wrong property is an adverse circumstance which affected the title in this situation. Furthermore, the Court does not believe that a survey would have revealed any problem with the title in this case. Mortgagee's title insurance is to ensure that the lender has a valid first mortgage over the property mortgaged. In this case, the mortgage and title insurance may not cover the property the lender intended them to cover, however, there is no problem with the title to the property actually mortgaged to the lender and insured by the title insurance policy. The lender still has a valid first mortgage over the property that was actually mortgaged. Therefore, the Court must disagree with Plaintiff's argument that the survey endorsement covers this situation.

3

C.    Did Commonwealth's erroneous inclusion of two different properties (one by municipal address and the other by legal description) as those whose title insured render the insurance contract ambiguous so as to mandate an interpretation of title coverage for the one intended by the insured?

**Discussion**

*Variance as to Property*

New South focuses on the difference in the property intended to be insured and that for which the legal description was provided in both the mortgage and the title insurance policy. In arguing that the Commonwealth policy provides coverage for failure to obtain clear title to the Willis Flat Road property, it relies upon the Commonwealth insurance provision indicating, in part, that the "policy insures against loss or damage by reason of any violation, variation, encroachment or adverse circumstances affecting the title that would have been disclosed by an accurate survey." New South argues that because an accurate survey would have revealed the discrepancy between the physical address of the Willis Flat Road property and the legal description provided for the Monk Road property, the policy should afford insurance of title on the intended property. As the question of the validity of the mortgage itself[2] is not at issue, we turn to the wording of the title insurance policy to consider New South's claim.

---

[2] The Mortgage indicates that:

Borrower does hereby mortgage and hypothecate to Lender the following described property located in RAPIDES Parish, Louisiana:

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".

which has the address of 351 WILLIS FLAT RD. GLENMORA Louisiana 71433 ("Property address")[.]

Exhibit "A" to the mortgage document reveals the same legal description provided in the title insurance, that of the unimproved property on Monk Rd.

4

The Commitment for Title Insurance indicates that the land referred to therein is that attached as "Exhibit 'A'." Exhibit A to the Commitment provides the following descriptions which the parties now agree is that of the unimproved parcel on Monk Road:

**Exhibit "A"**

A certain tract of land containing one (1.0) acres, more or less, situated in the South half (S/2) of the Northeast Quarter (NE/4) of the Northwest Quarter (NW/4) of Section 36, Township One (1) South, Range Four (4) West, and being more particularly described as follows:

The South half (S/2) of the Northeast Quarter of the Northwest Quarter of Section 36, Township One South, Range 4 West LESS AND EXCEPT Tracts #1 through 10 on Exhibit attached hereto:

Tract 1:     1.0 acre sold by Memphis Willis to Poley Buxton at Conveyance Book 484, page 452;

Tract 2:     2.1 acres sold by Memphis Willis to Mason Willis at Conveyance Book 1299, page 584;

Tract 3:     0.14 acre sold by Memphis Willis to Burton Ashworth at Conveyance Book 565, page 344;

Tract 4:     one-fourth (1/4) acre sold by Memphis Willis to Mason Willis at Conveyance Book 721, page 667;

Tract 5:     one-half (½) acre sold by Memphis Willis to Mason Willis at Conveyance Book 721, page 669;

Tract 6:     2.28 acres sold by Memphis Willis to Mason Willis at Conveyance Book 1204, page 166;

Tract 7:     1.00 acre sold by Memphis Willis to Wanda Glen Lockhart at Conveyance Book 1239, page 613 and Corrected at Conveyance Book 1306, page 210;

Tract 8:     4.0 acres sold by Memphis Willis at Mason Willis at Conveyance Book 1539, page 282;

Tract 9:     2.84 acres sold by Memphis Willis to Michael N. Willis at Conveyance Book 1555, page 242;

Tract 10:　　5.7 acres sold by Memphis Willis to Geraldine Johnson at Conveyance Book 1555, page 919[.]

The "Short Form Residential Loan Policy One-to-Four Family" issued by Commonwealth lists the "property address" as "351 Willis Flat Road, Glenmora, LA 71433." As far as identification, it further provides that:

> The estate or interest in the land identified in this Schedule A and which is encumbered by the insured mortgage is fee simple and is at Date of Policy vested in the borrower(s) shown in the insured mortgage and named above.
>
> *The land referred to in this policy is described as set forth in the insured mortgage and is identified as the property address shown above.*

(Emphasis added.)  Schedule B to the policy is entitled: "Exceptions From Coverage And Affirmative Assurances."  It indicates, in pertinent part, that:

> This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of the matters set forth below, except to the extent that the Company does insure in accordance with and subject to its terms against loss or damage which the insured shall sustain by reason of any inaccuracies in the affirmative assurances set forth below, except as limited in any addendum attached hereto:
>
> . . . .
>
> 5.　*This policy insures against loss or damage by reason of any violation, variation, encroachment or adverse circumstances affecting the title that would have been disclosed by an accurate survey.*  The term "encroachment" includes encroachments of existing improvements located on the land onto adjoining land, and encroachments onto the land of existing improvements located on adjoining land.

(Emphasis added.)  New South argues that the above assurance provides coverage in this instance as the complained of "variation" or "adverse circumstances affecting the title" would have been disclosed if an accurate survey had been performed.

6

As insurance policies are contracts between the parties, they are to be construed in light of the general rules of contract interpretation provided by the Louisiana Civil Code. *Bonin v. Westport Ins. Corp.*, 05-0886 (La. 5/17/06), 930 So.2d 904. Relevant to this review are Articles 2045 through 2049, which provide:

**Art. 2045.   Determination of the intent of the parties**
Interpretation of a contract is the determination of the common intent of the parties.

**Art. 2046.   No further interpretation when the intent is clear**
When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent.

**Art. 2047.   Meaning of words**
The words of a contract must be given their generally prevailing meaning.

Words of art and technical terms must be given their technical meaning when the contract involves a technical matter.

**Art. 2048.   Words susceptible of different meaning**
Words susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract.

**Art. 2049.   Provision susceptible of different meanings**
A provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective.

Notwithstanding the discrepancies regarding the location of the mortgaged property in this case, our review of the wording of the contract itself reveals no support for the argument that the affirmative assurance regarding an accurate survey provides coverage as urged by New South. A survey likely would have revealed the errors in both the mortgage and the insurance. In fact, it was a survey that ultimately revealed the error. However, the applicable affirmative assurance provides that the policy provides coverage losses/damages stemming from "any violation, variation, encroachment, or adverse circumstances *affecting the title*" that would have been

7

disclosed through a survey. (Emphasis added.) While the course of events in this case is not fully explained in the record, the problems associated with the varying property descriptions do not affect the "title" of either parcel of property. Thus, per the terms of the contract, there is no coverage for the inability to foreclose on the Willis Flat Road property.

Neither do we find relevant the jurisprudence from other states referenced by New South. Whereas those cases relate to the question of whether an encroachment/adverse circumstance would have been disclosed through an accurate survey and the scope of any such survey exception/assurance, this case is factually dissimilar in that its resolution lies with consideration of whether any such situation affected the title.

*Reformation of the Contract*

New South also contends that, due to the parties' mutual mistake as to which property was being insured, the policy must be reformed to provide coverage of the title of what it asserts was the property the parties intended to mortgage, *i.e.*, the Willis Flat Road property. Alternatively, it argues that the conflicting descriptions render the insurance contract ambiguous and, according to La.Civ.Code art. 2056[3], it must be construed in favor of coverage.

Here, with the same agent working for both, the parties entered into a contract with a discrepancy between the physical address and the property described. Any error initially occurred at the time of the mortgage and prior to the contract of

---

[3] Entitled "Standard-form contracts," Article 2056 provides:

> In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text.
>
> A contract executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party.

insurance. Certainly it must have been the intention of the parties to insure the title of the property actually mortgaged. Thus, the trial court did not err in its observation that the insurance policy issued "did exactly what it was intended to do. It insured that plaintiff had a valid first mortgage over the property described in the insurance policy." These assignments lack merit.

## DECREE

For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assigned to the appellant, New South Federal Savings Bank.

**AFFIRMED.**